**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

KELSO ENTERPRISES LIMITED AND
PACIFIC FRUIT LIMITED,

            **Plaintiffs,**

    - against -

M/V DIADEMA, her engines, boilers, etc.,
M/V ROTTERDAM, her engines, boilers,
etc., M/V MARYSTOWN, her engines,
boilers, etc., *in rem*, A.P. Moller – Maersk
A/S, Maersk Line, Maersk del Ecuador C.A.,
CW Schiffahrts GmbH & Co KG, JMS
Schiffahrtsges mbH & Co KG ms 'Antares
J', Seaspan Corp., *in personam*,

           **Defendants.**

-----------------------------------------------------X



**OPINION AND ORDER**

**08 Civ. 8226 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Kelso Enterprises Limited and Pacific Fruit Limited ("Kelso/Pacific")
are suing A.P. Moller-Maersk A/S, Maersk Line, and Maersk del Ecuador C.A.
("Maersk") for alleged damage to a shipment of bananas. Maersk now moves to
dismiss the suit based on improper forum. Kelso/Pacific cross-moves to compel
arbitration. For the reasons below, both Maersk's motion to dismiss and

Kelso/Pacific's cross-motion to compel arbitration are granted.

## II.    BACKGROUND[1]

On or about January 15, 2007, Kelso/Pacific and Maersk entered into a service contract for Maersk to transport bananas from Ecuador to Japan for Kelso/Pacific.[2]  Maersk appears to have drafted the contract.  The shipments were made pursuant to ten bills of lading with identical terms and conditions.[3]  Some of the cargo, delivered in good condition to Maersk around August 24, 2007, arrived at its destination damaged or short.[4]  The shipments were transported on the M/V Maersk Rotterdam, then the M/V Maersk Diadema, and finally, the M/V Marystown.  Each party to this suit is incorporated outside of the United States.[5]

The service contract and the bills of lading have different choice of

---

[1]    The background facts are taken from the complaint and are assumed to be true for the purposes of this motion.  No facts pertinent to this motion are in dispute.

[2]    See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Opp. Memo.") at 3.

[3]    See id.

[4]    See Complaint ("Compl.") ¶¶ 18-25.

[5]    See id. ¶¶ 2-9.

law clauses.[6] The sixth clause of the service contract provides that any suit arising under the contract is governed exclusively by New York and U.S. federal maritime law.[7] The bill of lading, by contrast, offers two options: if damage occurred en route to or from the U.S. or if the Carriage of Goods by Sea Act ("COGSA")[8] applies, U.S. law applies; if not, English law applies.[9] COGSA applies "to all contracts of carriage of goods by sea to or from ports of the United States in foreign trade."[10] The service contract does not contain a forum selection clause. The bill of lading, on the other hand, designates the English High Court of Justice as the appropriate forum when English law applies and the United States District Court for the Southern District of New York ("S.D.N.Y.") when U.S. law applies.[11]

Clause 7 of the service contract addresses potential conflicts between

---

[6]     See Multimodal Transport Bill of Lading ("Bill of Lading"), Ex. B to 4/22/09 Declaration of James Wang, Maersk Senior Claims Specialist, ¶¶ 6.2, 26; see Fixture Letter Service Contract Ecuador/Japan ("Service Contract"), Ex. A1 to 5/15/09 Declaration of John R. Keough III, plaintiffs' counsel, ¶ 6.

[7]     See Service Contract ¶ 6.

[8]     46 U.S.C. §§ 1300-1315.

[9]     See Bill of Lading ¶ 26.

[10]    46 U.S.C. § 30701 (13).

[11]    See Bill of Lading ¶ 26.

3

the two contracts.

> The terms and conditions of MAERSK LINE standard form of bill of lading covering individual shipments shall apply to shipments hereunder. The provisions in this Contract for rates and charges and U.S. arbitration/U.S. law shall not be overridden by the bill of lading. However, in the event any provision in MAERSK LINE's bill of lading which limits or governs its liability for damages to persons or property (including cargo), delays, misdelivery, or any other provision of the bill of lading mandated by applicable law is or are in conflict with the Contract, the bill of lading shall prevail.[12]

Clause 9 establishes that either party can initiate binding arbitration to be held in New York City "pursuant to the terms and procedures of the United States Arbitration Act."[13]

## III.   APPLICABLE LAW

### A.   Forum Selection Clause

Although forum selection clauses were once disfavored by U.S. courts, the Supreme Court has established that such provisions are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to

---

[12]     Service Contract ¶ 7.

[13]     *Id.* ¶ 9.

4

be 'unreasonable' under the circumstances."[14] In *Phillips v. Audio Active Limited*, the Second Circuit adopted a four-part test to determine whether a forum selection clause is valid and enforceable.[15] *First*, the clause must have been reasonably communicated to the party resisting enforcement.[16] *Second*, the clause must be mandatory.[17] *Third*, "the claims and parties involved in the suit [must be] subject to the forum selection clause."[18] A presumption of validity applies to a forum selection clause if it was communicated to the party resisting its enforcement, it is mandatory, and both the claims and parties involved are subject to it.[19]

---

[14]     *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972). *Accord D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (explaining that forum selection clauses are enforced when several conditions are met).

[15]     494 F.3d 378, 383 (2d Cir. 2007). *Accord Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 433 (S.D.N.Y. 2007) ("The Second Circuit recently instructed that the determination of whether to enforce a forum-selection clause involves a four-part analysis.").

[16]     *See Phillips*, 494 F.3d at 383 (citing *D.H. Blair & Co.*, 462 F.3d at 103).

[17]     *See id.* (citing *John Boutari & Son, Wines and Spirits, S.A. v. Attiki Imps. & Distribs, Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)). *Accord Klotz*, 519 F. Supp. 2d at 433 (explaining that the court must determine if the parties "are *required* to bring any dispute to the designated forum or simply *permitted* to do so").

[18]     *Phillips*, 494 F.3d at 383 (citing *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358-61 (2d Cir. 1993)).

[19]     *See id.* (citing *Roby*, 996 F.2d at 1362-63).

5

*Fourth*, the resisting party may rebut the presumption of enforceability "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"[20] This exception is to be interpreted narrowly.[21] In *Roby v. Corporation of Lloyd's,* the Second Circuit discussed four instances where enforcement of a forum selection clause would be unreasonable: "(1) if incorporation [of the clause] into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state."[22]

The Second Circuit has not directly ruled on whether the expiration of the statute of limitations in the forum selected by an enforceable forum selection clause would render enforcement of the clause unjust. However, courts in this

[20]    *Id.* at 383-84 (quoting *Bremen*, 407 U.S. at 15).

[21]    *See Roby*, 996 F.2d at 1363.

[22]    *Id.* (citations and quotations omitted).

6

district have overwhelmingly answered that question in the negative.[23]

## B.   Motion to Dismiss

In deciding a Rule 12(b)(3) motion to dismiss the court may consider

material outside of the pleadings.[24]   However, "[t]he plaintiff is entitled to 'have

the facts viewed in the light most favorable to it' and to be heard before any

disputed facts are resolved against it."[25]   If a party does not include an objection to

venue in its answer or fails to make a 12(b)(3) motion before responding to a

---

[23]   *See, e.g., Nippon Express U.S.A. (Illinois), Inc. v. M/V Chang Jiang Bridge*, No. 06 Civ. 694, 2007 WL 4457033, at *7 (S.D.N.Y. Dec. 13, 2007).   In *New Moon Shipping Co. v. Man B & W Diesel*, the Second Circuit stated in dicta that consideration of the expiration of the statutes of limitations "would create a large loophole for the party seeking to avoid enforcement of the forum selection clause. That party could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." 121 F.3d 24, 33 (2d Cir. 1997).

[24]   *See Brennen v. Phyto-Riker Pharm., Ltd.*, No. 01 Civ. 11815, 2002 WL 1349742, at *1 (S.D.N.Y. June 20, 2002) (citing *New Moon*, 121 F.3d at 26) (considering contract term not explicitly included in the relevant contract while determining enforceability of forum selection clause).   Courts in this circuit have considered dismissals pursuant to forum selection clauses under Rules 12(b)(1), 12(b)(3), and 12(b)(6). *See Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F. Supp. 2d 447, 450 (S.D.N.Y. 2002) (citations omitted). The Second Circuit has not required the use of a particular Rule. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006) (quoting *New Moon Shipping,* 121 F.3d at 28). However, Second Circuit courts "appear to prefer Rule 12(b)(3)." *Nippon Express U.S.A. (Illinois),* 2007 WL 4457033, at *3 (citation omitted).

[25]   *Nippon Express U.S.A. (Illinois)*, 2007 WL 4457033, at *3 (quoting *New Moon Shipping*, 121 F.3d at 29).

complaint, the defense is waived and the party has consented to the venue.[26]

## C.   Enforceability of Arbitration Clause

Although "[p]arties may be required to arbitrate only when they have agreed to do so . . . there is an 'emphatic federal policy in favor of arbitral dispute resolution.'"[27] "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'"[28] Arbitration must be ordered "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[29] "'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'"[30]

---

[26]   *See* Fed. R. Civ. Pro. 12(h).

[27]   *Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 503 (S.D.N.Y. 2005) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

[28]   *Eastern Fish Co. v. South Pacific Shipping Co., Ltd.*, 105 F. Supp. 2d 234, 237 (S.D.N.Y. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[29]   *Id.* (quoting *S.A. Mineraco da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984)).

[30]   *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001) (quoting *A T & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)).

8

The Second Circuit has adopted a two-step process for determining whether an arbitration clause governs a dispute when there are no federal statutory claims advanced.[31] *First*, "'a court should classify the particular clause as either broad or narrow.'"[32] The use of the language "arising out of or relating to" in the arbitration clause falls into the broad classification.[33] *Second*, when interpreting a narrow arbitration clause, the court must decide if the claim involves an issue that "is on its face within the purview of the clause" or is a collateral issue. In most cases, narrow clauses do not apply to collateral issues. When interpreting a broad clause, "'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'"[34]

**D.    Contract Interpretation**

"An ambiguity exists where a contract term 'could suggest more than

---

[31]    *See Bristol-Myers Squibb*, 354 F. Supp. 2d at 503 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

[32]    *Id.* (quoting *Louis Dreyfus Negoce S.A.*, 252 F. 3d at 224).

[33]    *E.g.*, *Eastern Fish*, 105 F. Supp. 2d at 237-38 (citing *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)).

[34]    *Bristol-Myers Squibb*, 354 F. Supp. 2d at 503 (quoting *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224).

9

one meaning when viewed objectively by a reasonably intelligent person who has

examined the context of the entire integrated agreement and who is cognizant of

the customs, practices, usages and terminology as generally understood in the

particular trade or business.'"[35] "'The cardinal principle for the construction and

interpretation of [] contracts [] is that the intentions of the parties should

control.'"[36] "[A]n ambiguity in a contract should be construed against its

drafter."[37] When specific and general phrases conflict, the specific phrases

determine the meaning of the contract.[38]

### E.    The New York Convention

The United States is a party to the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards of June 10, 1958, more commonly

---

[35]    *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75-6 (2d Cir. 2009) (quoting *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).

[36]    *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986)).

[37]    *Herrera v. Katz Commc'ns, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) (citing *Andy Warhol Found. for Visual Arts, Inc. v. Federal Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999) (explaining that ambiguity is construed against the contract's drafter, because the drafter is responsible for the ambiguity).

[38]    *See Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (citations omitted).

known as the New York Convention.[39]   "An arbitration agreement or arbitral

award arising out of a legal relationship [involving at least one non-U.S. citizen

party] . . . which is considered as commercial, including a transaction, contract, or

agreement . . . falls under the Convention."[40]   When a district court has jurisdiction

over an action falling under the New York Convention and the district court is also

in the "district and division which embraces the place designated in the agreement

as the place of arbitration," it is the appropriate venue for the purposes of

recognizing an award or compelling arbitration.[41]   All district courts have original

jurisdiction over actions falling under the Convention.[42]

The Federal Arbitration Act ("FAA") is applied to actions brought

under the New York Convention when the two are not in conflict.[43]   The FAA

establishes that a court must stay a proceeding when an action is brought to

compel arbitration regarding a matter that is "referable to arbitration under . . .

---

[39]   *See* 9 U.S.C. § 201.

[40]   *Id.* § 202.

[41]   *Id.* § 204.

[42]   *See id.* § 203.

[43]   *See id.* § 208.

[the] agreement."[44]

## V.    DISCUSSION

### A.    This Court Lacks Jurisdiction over the Merits

Although there is no dispute that the first two parts of the *Phillips* test

are satisfied, the parties contest the third part — which forum provided in the

forum selection clause applies to the claims in this suit. Maersk argues that this

Court is an inappropriate venue, and therefore that this case should be dismissed.[45]

Specifically, Maersk claims that clause 26 of the bill of lading mandates resolution

in the English High Court of Justice, as COGSA does not apply and the United

States was neither the origin nor destination of the shipments.[46] Kelso/Pacific, on

the other hand, argues that the service contract's choice of law clause opens an

escape hatch from the bill of lading's default forum provision. Kelso/Pacific

asserts that the choice of law provision found in the service contract, which

---

[44]     *Id.* § 3.  There is no contrary provision in the New York Convention.

[45]     *See* Defendants' Memorandum of Law in Support of Defendants'
Motion to Dismiss the Complaint ("Def. Memo.") at 8; *see* Defendants' Reply
Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Def.
Reply Memo.") at 1.  The parties disagree as to which of the two forums provided
in the forum selection clause applies under the third step of the *Phillips* test —
which mandates that the forum selection clause apply to the parties and claims.

[46]     *See* Def. Memo at 8, Def. Reply Memo at 1, 5.

12

dictates the application of U.S. federal maritime law, implicitly triggers the application of COGSA.[47]  In turn, Kelso/Pacific argues, the application of COGSA brings into effect an alternative venue provision in clause 26 of the bill of lading, which states that this Court is the exclusive venue for a suit when COGSA applies.[48]

Even assuming, *arguendo*, that the service contract's American choice of law provision prevails over the bill of lading's English choice of law provision, the application of U.S. law does not necessarily activate COGSA. COGSA only applies when a dispute concerns transportation to or from U.S. ports or arises under a "bill of lading or similar document of title . . . containing an express statement that it shall be subject to COGSA."[49]  Neither the bill of lading nor the service contract expressly invokes COGSA; thus the alternative venue provision of clause 26 of the bill of lading does not apply.  This Court is not the proper venue for litigation on the merits of this dispute.

### B.    The Service Contract's Arbitration Clause Applies

Even when the merits of a dispute cannot be properly brought in this

---

[47]    *See* Pl. Opp. Memo at 6-7.

[48]    *See id.*

[49]    46 U.S.C. § 30701(13).

13

Court, this Court may still entertain an action to compel arbitration under the New

York Convention, as it is the designated site of arbitration pursuant to the service

contract. Clause 9 of the service contract establishes that either party can require

arbitration of a dispute "arising out of or relating to" the contract.[50] This is a broad

arbitration clause and therefore carries a presumption of arbitrability.[51] The true

dispute is whether the service contract or the bill of lading governs arbitrability.

Clause 7 of the service contract explains how a conflict between the bill of lading

and the service contract is to be resolved. However, this clause is ambiguous. The

second sentence notes that the service contract's choice of U.S. arbitration and

U.S. law may not be overridden by the bill of lading, while the third sentence

notes that the bill of lading will prevail regarding liability as a result of cargo

damage.

Because any doubts concerning the scope of arbitrable issues should

be resolved in favor of arbitration, I find that the service contract is the governing

document and establishes the applicability of the U.S. arbitration clause in cases of

---

[50]    *See* Service Contract ¶ 9.

[51]    *See Eastern Fish,* 105 F. Supp. 2d at 237-38 (citing *Collins & Aikman Prods.,* 58 F.3d at 20). *See also Bristol-Myers Squibb,* 354 F. Supp. 2d at 503 (quoting *Louis Dreyfus Negoce S.A.,* 252 F.3d at 224).

14

cargo damage.[52] The fact that Maersk drafted the service contract also supports this decision, as Maersk now argues that the service contract requires that the terms of the bill of lading must apply.[53] While cargo damage claims may be collateral to the substance of the service contract, which sets freight and rate charges for the transport of the bananas, the damage claim implicates the parties' rights and obligations under the contract and hence is arbitrable under the broad arbitration clause found in the service contract.

## V.   CONCLUSION

For the foregoing reasons, both Maersk's motion to dismiss and Kelso/Pacific's motion to compel arbitration are granted. This action is now closed, without prejudice to re-open if and when a party moves to enforce an arbitration award. The Clerk of the Court is directed to close these motions (Docket Nos. 14 and 17) and this case.

SO ORDERED:

Shira A. Scheindlin

---

[52]     See *Eastern Fish*, 105 F. Supp. 2d at 237.

[53]     See Def. Reply Memo. at 12.

15

U.S.D.J.

Dated:      New York, New York
            June 23, 2009

## - Appearances -

**For Plaintiffs:**

Peter Caro Dee, Esq.
John R. Keough, III, Esq.
Waesche, Sheinbaum and O'Regan, P.C.
111 Broadway
New York, NY 10006
(212) 227-3550

**For Defendants:**

James Lawrence Ross, Esq.
Manuel A. Molina, Esq.
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005
(212) 425-1900